1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| SPRAWLDEF, et al., | Case No. 15-cv-02331-LB |
| Plaintiffs, | **ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| FEDERAL EMERGENCY MANAGEMENT AGENCY, et al., | Re: ECF No. 96 |
| Defendants. | |

## INTRODUCTION

In this National Environmental Policy Act ("NEPA") case, SPRAWLDEF and Sierra Club sued over the Federal Emergency Management Agency's ("FEMA") funding of a fire-prevention project in the East Bay Hills of Alameda County, California.[1] The plaintiffs allege that FEMA violated NEPA's public disclosure mandate by adopting a fire-prevention method — the "unified methodology" — that was not adequately described or analyzed.[2] The two plaintiffs therefore sued

---

[1] First Amended Compl. ("FAC") — ECF No. 29, ¶ 1. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* ¶¶ 1–2.

ORDER — No. 15-cv-02331-LB

1   to "require forthright environmental review of FEMA's plans to fund fire protection at the East

2   Bay lands."[3]

3       In the related case *Hills Conservation Network v. FEMA, et al.*, No. 3:15-cv-01057, the

4   plaintiff and FEMA settled a similar dispute.[4] Under the settlement agreement, FEMA withdrew

5   its authorization of the unified methodology and the grants funding the projects implementing it.[5]

6   FEMA now argues — in this case — that the withdrawal of the unified methodology moots

7   SPRAWLDEF and Sierra Club's claims.[6] The court agrees.

8

9                                          **STATEMENT**

10      "Residential development in the 'East Bay Hills' along the east side of the San Francisco Bay

11  is subject to grave and unique fire threats."[7] The threats are caused by "[a] long urban-wildland

12  interface, steep topography, accumulation of very low-moisture fuels . . . , and periodic, recurring

13  conditions of extremely hot, dry 'Diablo' winds."[8] Nonnative tree species — including eucalyptus

14  and Monterey pine — also contribute to the hazardous conditions.[9] Eucalyptus, with highly

15  flammable tops "subject to torching" and "constantly shed[ding] bark [that] provides a ubiquitous

16  fire tinder," "has increased in density and spread prolifically" in the area.[10] "Thousands of homes

17  adjoin undeveloped natural areas which have repeatedly and disastrously been engulfed in fires."[11]

18      In response to these threats, defendants East Bay Regional Park District, City of Oakland, and

19  the Regents of the University of California — each an owner of undeveloped land next to the at-

20

21  _____

22  [3] *Id.* ¶ 3.

    [4] *See* Compl., Case No. 3:15-cv-01057 — ECF No. 1; Notice of Settlement, Case No. 3:15-cv-01057
23  — ECF No. 107.

    [5] Amended Record of Decision — ECF No. 96-3; Notices of Termination — ECF No. 96-2.
24
    [6] Motion to Dismiss — ECF No. 96.

25  [7] FAC ¶¶ 23.

26  [8] *Id.*

    [9] *Id.* ¶ 30.
27  [10] *Id.*

28  [11] *Id.* ¶ 23.

United States District Court
Northern District of California

1    risk residential developments — "sought federal disaster money for activities to mitigate wildland

2    fire hazards on public lands."[12] Before funding the projects, though, "FEMA was required to

3    conduct [an] environmental review of the [proposed] project."[13]

4         FEMA issued a draft Environmental Impact Statement under NEPA.[14] "A key fire prevention

5    goal of the draft [Impact Statement] involved replacing the highly flammable eucalyptus and pine

6    'overstory' with natural plant community restoration."[15] There was a "highly charged period of

7    public comment on the draft [Impact Statement]."[16] Environmental groups like the plaintiffs here

8    urged "place-by-place restoration of native plant communities" and protection of threatened

9    animal species, such as the California red-legged frog, the Alameda whipsnake, and the pallid

10   manzanita.[17] FEMA also consulted with the United States Fish & Wildlife Service; Fish &

11   Wildlife issued a Biological Opinion (after completion of the draft Impact Statement), which

12   analyzed the biological effects of the project.[18]

13        Following this period of public comment, and after Fish & Wildlife's Opinion, FEMA issued

14   the final Environmental Impact Statement.[19] The final Impact Statement "adopt[ed] an undefined

15   'unified methodology'" that "was not analyzed in the draft [Impact Statement]," "not addressed in

16   the [Fish & Wildlife] Biological Opinion, and not subjected to the public review NEPA

17   requires."[20] The new methodology would "focus[] on temporary thinning rather than natural

18   restoration, and by the end of 10 years complete removal to achieve both fire risk reduction and

19   whipsnake mitigation goals."[21] The unified methodology "would be applied to portions of four

20

United States District Court
Northern District of California

21   _____
     [12] *Id.* ¶¶ 16–18, 23, 27.

22   [13] *Id.* ¶ 4.

23   [14] *Id.* ¶¶ 2, 5, 7.

     [15] *Id.* ¶ 5.

24   [16] *Id.* ¶ 7.

25   [17] *Id.* ¶ 32–33.

26   [18] *Id.* ¶¶ 33–36, 45–51.

     [19] *See id.* ¶¶ 1, 2, 7–10.

27   [20] *Id.* ¶¶ 2, 9.

28   [21] *Id.* ¶ 39 (quoting FEMA's Record of Decision).

1   high fire risk treatment areas that are in close proximity to structures: Strawberry Canyon (UCB),

2   Claremont Canyon (UCB), North Hills-Skyline (Oakland), and Caldecott Tunnel (Oakland)."[22]

3   "Despite the vagueness of the 'unified methodology,' [FEMA's] Record of Decision

4   conclude[d] that it [was] not . . . [a] significant enough [change] to warrant supplementing the

5   [Impact Statement] descriptions and analysis."[23] According to FEMA, the unified methodology

6   did not substantially change the proposed action and did not create new significant circumstances

7   warranting NEPA-review supplementation.[24] But SPRAWLDEF and Sierra Club disagree, and so

8   they sued.

9   The plaintiffs allege that the unified methodology "was not analyzed in the draft [Impact

10  Statement] and therefore fails the primary public disclosure purpose of the [Impact Statement]"

11  under NEPA.[25] They assert that the methodology fails "to describe and weigh 'thinning' the

12  eucalyptus versus long-term restoration of native East Bay Hills shrubs and plant communities

13  with more manageable fire behavior characteristics."[26] They accordingly claim the defendants

14  violated NEPA, 42 U.S.C. § 4321 *et seq.*, "by failing to properly describe and evaluate alternatives

15  associated with the invasive, non-native overstory species and the creation of long-term, stable

16  native plant communities."[27] SPRAWLDEF and Sierra Club allege three broad categories of

17  NEPA deficiencies: (1) "The vague and arbitrary 'unified methodology' fails to describe and

18  analyze alternatives"; (2) "Failure to consider the full period and area affected by the project"; and

19  (3) "Failure to identify inconsistencies with the Executive Order on Invasive Species."[28]

20  The parties in this case — and in the related *Hills Conservation Network* case — filed fully

21  briefed summary-judgment motions. But before the court ruled on those motions, FEMA settled

22

23  ---

24  [22] *Id.* (quoting FEMA's Record of Decision).

    [23] *Id.* ¶ 43.

25  [24] *Id.* ¶ 44.

26  [25] *Id.* ¶ 2.

    [26] *Id.*

27  [27] *Id.* ¶ 54.

28  [28] *Id.* ¶¶ 57–82 (quoting the headings).

United States District Court
Northern District of California

1  with the *Hills* plaintiff.[29] Under that agreement, FEMA withdrew the portion of the Record of

2  Decision authorizing the unified methodology and terminated the grants to the University and

3  Oakland implementing it.[30] FEMA and the Park District, reading SPRAWLDEF and Sierra Club's

4  complaint as attacking only the unified methodology, now move to dismiss this case.[31] They argue

5  that the case is moot because the unified methodology has been withdrawn and will not be

6  implemented.[32] Oakland does not oppose the motion; the University filed its own motion to

7  dismiss or intervene.[33]

8

9  **GOVERNING LAW**

10  A complaint must contain a short and plain statement of the ground for the court's jurisdiction

11  (unless the court already has jurisdiction and the claim needs no new jurisdictional support).

12  Fed. R. Civ. P. 8(a)(1). The plaintiff has the burden of establishing jurisdiction. *See Kokkonen v.*

13  *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Farmers Ins. Exch. v. Portage La*

14  *Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990). A defendant's Rule 12(b)(1)

15  jurisdictional attack can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.

16  2000). "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to

17  invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though

18  adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*, 750

19  F.3d 776, 780 n.3 (9th Cir. 2014). Under a facial attack, the court "accept[s] all allegations of fact

20  in the complaint as true and construe[s] them in the light most favorable to the plaintiffs." *Warren*

21  *v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). In a factual attack, the court

22  "need not presume the truthfulness of the plaintiff's allegations" and "may review evidence

23

---

24  [29] Joint Motion to Vacate Hearing Date — ECF No. 85; Order — ECF No. 90; Notice of Settlement, Case No. 3:15-cv-01057 — ECF No. 107.

25  [30] Settlement Agreement ¶¶ 1–2; Amended Record of Decision at 4; Notices of Termination.

26  [31] *See generally* Motion to Dismiss.

27  [32] *Id.*

28  [33] Oakland Statement of Non-Opposition — ECF No. 100; Park District Motion to Dismiss or Intervene — ECF No. 97.

ORDER — No. 15-cv-02331-LB          5

United States District Court
Northern District of California

1    beyond the complaint without converting the motion to dismiss into a motion for summary

2    judgment." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

3        If a court dismisses a complaint, it should give leave to amend unless the "the pleading could

4    not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal.*

5    *Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

6

7                          **ANALYSIS**

8    **1.  The Plaintiffs' Challenges to the Unified Methodology Are Moot**

9        The first issue is whether FEMA's withdrawal of the unified methodology moots any (if not

10    all) of the plaintiffs' claims. Because FEMA withdrew that portion of the Record of Decision

11    authorizing the methodology, terminated the grants to the University and Oakland that would have

12    implemented it, and must go through new NEPA processes before any subsequent grants are

13    authorized, the plaintiffs' unified methodology-based claims are dismissed as moot.

14

15    **1.1  The Unified-Methodology Claims Are Moot**

16        "[F]ederal courts have no jurisdiction to hear a case that is moot, that is, where no actual or

17    live controversy exists." *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir. 1999).

18    "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally

19    cognizable interest in the outcome." *Cnty. of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979)

20    (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). "[T]he question is not whether the

21    precise relief sought at the time the application for an injunction was filed is still available. The

22    question is whether there can be *any* effective relief." *West v. Sec'y of Dept. of Transp.*, 206 F.3d

23    920, 925 (9th Cir.2000) (quoting *Nw. Envtl. Defense Ctr. v. Gordon*, 849 F.2d 1241, 1244–45 (9th

24    Cir. 1988)).

25        The defendant's "burden of demonstrating mootness 'is a heavy one.'" *Davis,* 440 U.S. at 631

26    (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33 (1953)). And "[m]ere voluntary

27    cessation of allegedly illegal conduct does not moot a case; it if did, the courts would be

28    compelled to leave [t]he defendant . . . free to return to his old ways." *United States v.*

United States District Court
Northern District of California

1    *Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968) (quoting *W.T. Grant Co.*, 345

2    U.S. at 632); *see also Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000). Voluntary

3    cessation of illegal conduct does not render a challenge to that conduct moot unless the defendant

4    can show "(1) there is no reasonable expectation that the wrong will be repeated, and (2) interim

5    relief or events have completely and irrevocably eradicated the effects of the alleged violation."

6    *Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992); *see also Lindquist v. Idaho State Bd. of

7    Corrections*, 776 F.2d 851, 854 (9th Cir. 1985) (quoting *Davis*, 440 U.S. at 631); *Adarand*, 528

8    U.S. at 222 ("Voluntary cessation of challenged conduct moots a case . . . only if it is absolutely

9    clear that the allegedly wrongful behavior could not reasonably be expected to recur.").

10       Courts have considered at least three factors to determine whether there is a reasonable

11   expectation that the wrong will be repeated. *See Envtl. Prot. Info. Ctr. v. U.S. Forest Serv.*, No. C-

12   02-2708 JCS, 2006 WL 2130905, at *5 (N.D. Cal. July 28, 2006). First, "whether the defendant

13   has shown that a change was the result of serious deliberation and was made for convincing

14   reasons (other than the desire to avoid litigation)." *Id.*; *see also Armster v. United States Dist.

15   Court for the Cent. Dist. of Cal.*, 806 F.2d 1347, 1359 (9th Cir. 1986) (finding defendant's

16   concession that conduct was illegal more likely to establish mootness). Second, "the extent to

17   which the defendant has committed not to engage in the challenged practice in the future and the

18   degree to which any promises made are likely to be binding." *Envtl. Prot. Info. Ctr.*, 2006 WL

19   2130905 at *5; *see also Quincy Oil, Inc. v. Dep't of Energy*, 620 F.2d 890, 895 (Temp. Emer. Ct.

20   App. 1980) (concluding possibility of recurrence speculative where defendant promised to

21   "vigorously defend" the new policy); *Wilcher v. City of Wilmington*, 139 F.3d 366, 370 n.2 (3d

22   Cir. 1998) (finding defendant's reservation of its right to resume the challenged procedure did not

23   make the case moot). And third, "whether the cessation is based on external circumstances that

24   have made a recurrence of the challenged conduct impossible or impractical." *Envtl. Prot. Info.

25   Ctr.*, 2006 WL 2130905 at *5; *see also Forest Serv. Employees for Envtl. Ethics v. United States

26   Forest Serv.*, 408 F. Supp. 2d 916, 918–19 (N.D. Cal. 2006) (reasoning that the economic

27   circumstances made the challenged conduct unlikely to recur).

28

United States District Court
Northern District of California

1    Under those factors, in *Envtl. Prot. Info. Ctr. v. U.S. Forest Serv.*, there was a reasonable

2    expectation that the wrong would recur. 2006 WL 2130905 at \*10. There, the plaintiff challenged

3    a fire-management plan that the Forest Service issued without preparing an Environmental

4    Evaluation or Environmental Impact Statement. *Id.* at \*1. The court held that the Forest Service's

5    plan violated NEPA and the Service subsequently withdrew it. *Id.* at \*1–\*2. The withdrawal of the

6    plan did not, however, demonstrate that the wrongs were unlikely to be repeated. *Id.* at \*8–10.

7    "First, there [was] no evidence that the withdrawal of the 2005 Fire Management Plan

8    represent[ed] a 'genuine' change in policy rather than merely a strategic move in response to the

9    litigation." *Id.* at \*9. The Service did not demonstrate a shift in thinking, but instead maintained

10   that the plan complied with NEPA requirements. *Id.* Second, the Forest Service did not offer the

11   "sort of assurance that might make 'absolutely clear' that there [was] no reasonable possibility of

12   recurrence." *Id.* The Service's promise to conduct the appropriate NEPA process for future fire-

13   management decisions was insufficient, "especially in light of the fact that the Forest Service

14   failed to achieve this objective despite [previous] 'exhaustive' efforts." *Id.* And third, there were

15   no relevant changes in external circumstances — "there [was] no evidence that [the subject area]

16   no longer need[ed] a fire plan or that issuance of a fire plan [was] no longer possible." *Id.* at \*10.

17       The Forest Service therefore failed to meet its burden, but the court nonetheless dismissed the

18   case as moot because it could not grant effective relief. *Id.* at \*12. The court reasoned that, "there

19   [was], at most, a *possibility* that the Forest Service [would] issue another fire plan" requiring a

20   NEPA-compliant evaluation. *Id.* If that were to happen, "it [would] be the product of a new

21   administrative process and likely [would] raise new issues that [were] not addressed in [that]

22   lawsuit." *Id.* "Such a remote and undefined future set of events is not an appropriate subject for an

23   injunction" — any proposed relief would essentially require the Forest Service to comply with the

24   law. *Id.* The court, in its discretion and because effective relief could not be granted, dismissed the

25   case as moot. *Id.*

26       Other courts have similarly dismissed plaintiffs' NEPA claims as moot where (1) the

27   government withdrew the challenged decision and (2) any future decision would necessarily go

28   through NEPA's evaluation process. For example, in *Wildwest Inst. v. Seesholtz*, the plaintiff

United States District Court
Northern District of California

ORDER — No. 15-cv-02331-LB                    8

1    challenged the Forest Service's logging projects for "fail[ing] to adequately protect the viability of

2    wildlife species, and provide for their habitat, thereby violating NFMA and NEPA." No. CV-07-

3    199-S-BLW, 2008 WL 3289486, at *1 (D. Idaho Aug. 8, 2008). But "the Forest Service's

4    irrevocable withdrawal of both projects, the pending completion of a Revised Forest Plan, and the

5    need to re-initiate the NEPA process if either project is reinitiated" mooted the plaintiff's claims

6    and satisfied the Service's burden under the voluntary-cessation doctrine. *Id.* at *3. Similarly, in

7    *City of Berkeley v. United States Postal Service*, the plaintiffs challenged the USPS's contract to

8    sell a post office building, alleging "that the USPS violated NEPA by declaring a categorical

9    exclusion in secret, and in an arbitrary and capricious manner." Nos. C 14-04916 WHA, C 14-

10   05179 WHA, 2015 WL 1737523, at *1 (N.D. Cal. April 14, 2015). The claims became moot,

11   however, when "(1) [the buyer] terminated the sales agreement and (2) the USPS . . . rescinded

12   the 2013 final determination, such that if the USPS later decide[d] to relocate, it [would] go

13   through the process all over again under 39 C.F.R. 241.4." *Id.* at *2. *Cf. Forrestkeeper v. Benson*,

14   No. 1:14-cv-00341-LJO-SKO, 2014 WL 4193840, at *6 (E.D. Cal. Aug. 22, 2014) (concluding

15   that plaintiff's claims were not moot where "the Forest Service may have the regulatory authority

16   to reinstate the timber sale without engaging in a public participation process" and while "the

17   NEPA framework for the[] [withdrawn] actions [remained] intact").

18       Here, like the cases above, and to the extent the complaint is based on the unified

19   methodology, the plaintiffs' claims are moot. Under the settlement agreement in *Hills*

20   *Conservation Network*, FEMA terminated the University and Oakland funding grants for projects

21   utilizing the unified methodology.[34] FEMA also withdrew the portion of Record of Decision

22   authorizing those projects and the unified methodology.[35] And the *Hills* settlement agreement and

23   Amended Record of Decision require that future grants to the University and Oakland go through

24   the NEPA evaluation process:

25           FEMA agrees that any grant application for East Bay Hills fuel risk vegetation
             management by UCB or Oakland will be subject to additional NEPA procedures

26

27   ───────────────────
     [34] Settlement Agreement — ECF No. 96-1; Notices of Termination — ECF No. 96-2.

28   [35] Amended Record of Decision — ECF No. 96-3.

     ORDER — No. 15-cv-02331-LB                  9

> including the preparation of an appropriate environmental review document, public notice, and an opportunity for public comment.[36]

> FEMA has determined that before it will authorize funding for East Bay Hills fuel risk vegetation management by UCB or the City of Oakland, including work within the scope of the terminated grants[,] that it will undertake additional NEPA procedures.[37]

These facts demonstrate that there is no reasonable expectation that the wrong — *i.e.* the implementation of the unified methodology without proper public disclosure and discussion — will be repeated. Like the cases above, FEMA has (1) withdrawn the applicable decision (or portion thereof) and the grants adopting and applying the methodology, and (2) obligated itself to undertake additional NEPA procedures before any new grants to the University or Oakland. In contrast to *Envtl. Prot. Info. Ctr.* and *Forrestkeeper* — where the district courts were not convinced by the government's promises to undertake future NEPA review procedures — FEMA's assurances here (written into two legally binding documents) provide the type of assurance making it "'absolutely clear' that there is no reasonable possibility of recurrence." *Envtl. Prot. Info. Ctr.*, 2006 WL 2130905 at *9; *Forrestkeeper*, 2014 WL 4193840 at *6.

And, because FEMA withdrew the relevant part of the Record of Decision and terminated the grants, the court cannot provide effective relief. It would serve no purpose to require FEMA to go back and analyze site-by-site overstory thinning versus removal (instead of the unified methodology) at sites for which it has revoked the funding. And it is premature to order FEMA do so in any future grant — such an order could have no effect other than requiring FEMA to comply with NEPA, and such potential harm (*i.e.* caused by FEMA's failure to do so) is too remote. The court therefore could not grant effective relief based on SPRAWLDEF and Sierra Club's unified methodology attacks.

The court notes that the other factors often considered in these cases are not met here. For example, as in *Envtl. Prot. Info. Ctr.*, there is no evidence that FEMA's change in course represents a "genuine" change in policy, rather than a strategic response to litigation. The change is in fact a direct response to the *Hills* litigation and settlement, and FEMA actually denies any

---

[36] Settlement Agreement ¶ 5.

[37] Amended Record of Decision at 4.

United States District Court
Northern District of California

1   NEPA violation.[38] And like *Envtl. Prot. Info. Ctr.*, there has been no change in circumstances

2   making the challenged conduct impossible or unnecessary. But on this record, for the reasons

3   above, the plaintiffs' unified methodology-based challenges are moot.

4       The plaintiffs argue that the cases discussed above are inapplicable because they involved

5   projects that were terminated completely, rather than partially, and relatedly emphasize that the

6   Park District's funding grant remains in place.[39] But mootness is analyzed claim by claim: if the

7   plaintiffs can no longer obtain relief on a claim, that claim must be dismissed for lack of

8   jurisdiction. *See Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003). So even if there were claims

9   related to the Park District project (which does not apply the unified methodology), those would

10  be analyzed separately from the claims challenging the unified methodology. Thus, the Park

11  District's continuing project is irrelevant to the extent that the plaintiff's claims challenge the

12  unified methodology.

13

14      **1.2  The Capable-of-Repetition Exception Does Not Apply**

15      Certain "extraordinary" cases are excepted from the mootness doctrine where the challenged

16  conduct "is capable of repetition but evades review." *Alaska Ctr. For Env't v United States Forest*

17  *Serv.,* 189 F.3d 851, 854 (9th Cir. 1999) (citing *Weinstein v. Bradford,* 423 U.S. 147, 148–49

18  (1975)). The exception is limited to cases where "(1) the duration of the challenged action is too

19  short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the

20  plaintiffs will be subjected to it again." *Id.* (quoting *Greenpeace Action v. Franklin,* 14 F.3d 1324,

21  1329 (9th Cir.1992)).

22      In *Klamath Siskiyou Wildlands Center v. United States Bureau of Land Management*, the

23  BLM's alleged NEPA violations — subsequently withdrawn — were not the type of conduct

24  capable of repetition but evading review. No. 05-3094-CO, 2007 U.S. Dist. LEXIS 20714, at *18–

25  *19 (D. Or. Aug. 6, 2007). There, the challenged action was not too short to allow full litigation:

26

27  [38] Settlement Agreement, Recitals ("[D]efendants deny the allegations in the complaint and deny that any violations of NEPA or any other law occurred.")

28  [39] Opposition at 6, 8.

United States District Court
Northern District of California

1    the "case was fully briefed on the merits and a Findings and Recommendation was issued before

2    the mootness became an issue." *Id.* at \*19. And there was no reasonable expectation that the

3    plaintiffs would again be subject to the action: "it would be premature and unreasonable to assume

4    that the BLM would repeat the alleged defects in the development of a new project," and the BLM

5    could not apply the challenged decisions to any new projects because the Ninth Circuit had found

6    them invalid. *Id.* The exception therefore did not apply. *Id.*

7        Here, like *Klamath Siskiyou*, FEMA's alleged misconduct is not capable of repetition but

8    evading review. First, FEMA's conduct is not too short to allow litigation on the merits: the case

9    was fully briefed for summary judgment before the mootness became an issue. Second, there is no

10   reasonable expectation that the plaintiffs will be subject to the same alleged misconduct: FEMA

11   has obligated itself to undergo NEPA processes for future grants and it would be premature to

12   assume that it will engage in the same alleged misconduct in doing so. The exception therefore

13   does not apply.

14

15   **1.3  The Impact Statement's Discussion of the Unified Methodology**

16       SPRAWLDEF and Sierra Club argue that their claim is not moot because the final Impact

17   Statement references the unified methodology.[40] The issue is whether the Impact Statement's

18   discussion of the methodology — despite the amendment to the Record of Decision and the

19   termination of the relevant grants — saves the plaintiffs' claims.

20       The plaintiffs brought this case under the Administrative Procedure Act, which authorizes

21   courts to "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious,

22   an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under the

23   Act, courts may review a "final agency action for which there is no other adequate remedy in a

24   court." *Id.* § 704. "An agency action is 'final' when (1) the agency reaches the 'consummation' of

25   its decisionmaking process and (2) the action determines the 'rights and obligations' of the parties

26   or is one from which 'legal consequences will flow.'" *Rattlesnake Coal. v. United States Envtl.*

27

28   [40] Opposition at 4, 7. The plaintiffs reiterated this argument at the October 27 hearing.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

*Prot. Agency*, 509 F.3d 1095, 1103 (9th Cir. 2007) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). In NEPA actions, "the [government] does not take a final agency action until it completes its review of the grant application and decides to disburse the appropriated funds." *Rattlesnake Coal.*, 509 F.3d at 1104. And "[a]bsent final agency action, there [is] no jurisdiction in the district court to review [a] NEPA claim." *Id.*

Here, on this record, the appropriate measure of the "consummation" of FEMA's decision-making process is the Amended Record of Decision, not the final Impact Statement. The Impact Statement discussed the unified methodology in the context of its application to the University and Oakland grants.[41] But the withdrawal of those grants renders the Impact Statement's discussion of the methodology an "action" that (1) does not affect the parties' rights and (2) from which legal consequences will not flow. FEMA's final determination — reflected in the Amended Record of Decision and surviving portions of the Impact Statement — does not fund the methodology. And FEMA cannot simply rely on the Impact Statement to implement the methodology in the future: both the *Hills* settlement agreement and the amended Record of Decision obligate FEMA to undertake appropriate NEPA review before awarding future grants.[42]

It is thus too late to challenge the previously contemplated use of the methodology — FEMA's final decision terminated the relevant grants. It is also too early to challenge any future use — FEMA must review and take (new) final action regarding future applications before they can be contested. The final Impact Statement's discussion of the unified methodology accordingly has no effect on the plaintiffs' claims; that agency action is not "final" and not reviewable under the Administrative Procedure Act.

\*   \*   \*

In sum, to the extent that the plaintiffs' claims challenge the unified methodology, they are moot. The court next considers which of the plaintiffs' claims attack the methodology.

---

[41] FAC ¶ 39.

[42] Settlement Agreement ¶ 5; Amended Record of Decision at 4.

1    **2. All of the Plaintiffs' Claims Are Moot**

2        The plaintiffs make two general arguments: (1) the complaint does not simply challenge the

3    unified methodology, but more broadly insufficient comparison between "thinning and overstory

4    removal" alternatives in FEMA's Impact Statement; and (2) with the termination of the University

5    and Oakland grants, the Impact Statement is now more deficient than before.[43] These arguments

6    raise two legal issues: first, whether the FAC includes claims distinct from the challenges to the

7    unified methodology; and second, whether the plaintiffs should be allowed to amend or

8    supplement their FAC.

9

10        **2.1  The Plaintiffs' Claims Attack Only the Unified Methodology**

11        In the FAC, the plaintiffs allege that FEMA violated NEPA "by failing to properly describe

12    and evaluate alternatives associated with the invasive, non-native overstory species and the

13    creation of long-term, stable native plant communities."[44] By failing to do so, they allege, FEMA

14    "failed to provide a 'full and fair discussion' of the environmental implications of its federal grant

15    funding."[45] The alleged failures fall into three broad groups of allegations.

16        In the first group, the plaintiffs allege that the "vague and arbitrary 'unified methodology' fails

17    to describe and analyze alternatives."[46] They assert that "[b]ecause of the [final Impact

18    Statement's] sudden adoption of the vague 'unified methodology,' i[t] fails to directly evaluate —

19    head-to-head — the alternative benefits and consequences between merely thinning eucalyptus

20    versus complete removal followed by long-term re-establishment of native plant communities with

21    less extreme fire behavior."[47] The plaintiffs also allege that the final Impact Statement failed to

22    take into account Fish & Wildlife's Biological Opinion.[48] According to them, FEMA should have

23

24    _____

      [43] Opposition at 4, 6, 7, 10.

25    [44] FAC ¶ 54.

26    [45] *Id.* ¶ 56.

      [46] *Id.* at 10 (heading).

27    [47] *Id.* ¶ 57.

28    [48] *Id.* ¶¶ 58–64.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  supplemented the final Impact Statement to incorporate the Biological Opinion's findings, but that

2  it failed to do so when it did not "discuss the differences between overstory 'thinning' versus

3  complete removal and native restoration and the clearly different and significant potential impacts

4  of these alternatives, which the Biological Opinion identified."[49] The final Impact Statement

5  "lack[ed] description of the 'unified methodology,' [and] omit[ted] analysis of [the] vaguely-

6  described thinning alternative."[50] Read as a whole, these allegations challenge only the analysis

7  and application of the unified methodology and are moot.

8      In the second group of allegations, the plaintiffs assert that FEMA failed "to consider the full

9  period and area affected by the project."[51] These allegations attack the FEMA grants' time and

10  acreage limits (*i.e.* the project duration and the covered land areas), and how these measurements

11  differ from Fish & Wildlife's and the Park District's 2010 Plan.[52] The plaintiffs explain the

12  importance of the time and acreage limits:

> 69.  Time and acreage limits resulted in an incomplete analysis for fire hazard reduction, long-term vegetation management to create habitat for three federally protected species, and for undeveloped lands that are dedicated in perpetuity as parkland. While called a "unified" approach, it is not. Whatever it might be called, the final EIS is a significant, unanalyzed departure from the project analyzed by the Park District in its 2010 EIR for its activities, and from the earlier draft EIS.
>
> 70.  Failure to consider the project impacts beyond the 10-year funded window ignored reasonably likely natural evolution after the 10 years, during which time native communities will again by subject to the invasive overstory. Fire risk is certain to be altered for better or worse depending upon which never-presented alternatives are chosen for maintaining or not maintaining the project area.[53]

19      Like the first group, these assertions challenge the unified methodology: the final EIS's unified

20  methodology did not address Fish & Wildlife's or the Park District's considered time and acreage

21  limits. In doing so, the unified methodology departed from the Park District's 2010 Plan — the

22  basis for the methodology[54] — and the draft Impact Statement. To the extent that these alleged

---

[49] *Id.* ¶ 63–64.

[50] *Id.* ¶ 62.

[51] *Id.* at 11 (heading).

[52] *Id.* ¶¶ 66–70.

[53] *Id.* ¶¶ 69–70.

[54] *Id.* ¶ 58.

1    deficiencies are about the unified methodology, the claim is moot because the methodology is no

2    longer being applied.

3        In the third group, the plaintiffs assert that FEMA failed "to identify inconsistencies with the

4    Executive Order on Invasive Species."[55] The FAC generally describes the Executive Order and

5    regulations,[56] and alleges that FEMA did not comply because it did not "analyze the project

6    implications to the invasive eucalyptus overstory."[57] The FAC goes on to specify what is wrong

7    with FEMA's final analysis:

8            80.  The "unified methodology" considered in the [final] EIS, promotes the spread
             of eucalyptus because it allows its re-growth throughout "unified" project areas
9            after the 10-year FEMA period. Along with future native habitat degradation, the
             dangerous fire conditions arising from eucalyptus will return.

10
             81.  A proper area-by-area comparison between thinning versus restoration of the
11           native understory is necessary to comply with the Executive Order, including in
             the fuel break areas where nonnative grasses would proliferate.[58]

12        Again, as above, these allegations challenge the unified methodology. The assertions do not,

13   for example, address any supposed deficiencies in the Park District's project, or the remaining

14   portion of the Oakland project.[59] In their opposition brief, the plaintiffs contest FEMA's argument

15   that the FAC's allegations all relate to the unified methodology, and point to paragraph 71, "which

16   says nothing of the unified methodology."[60] Although true — paragraph 71 merely introduces the

17   Executive Order — the remainder of the allegations (specifically, the factual ones[61]) make clear

18   that the challenge is to the unified methodology's alleged deficiencies. These allegations, then, are

19   also moot.

20        There are, however, two potential claims that fall outside of these three broad categories. The

21   first relates to the final Impact Statement's discussion of "fuel break" areas.[62] SPRAWLDEF and

22   _____

23   [55] *Id.* at 12 (heading).

     [56] *Id.* ¶¶ 71–74, 76–78.

24   [57] *Id.* ¶ 75.

25   [58] *Id.* ¶¶ 80–81.

26   [59] *See* Amended Record of Decision at 4 (identifying the remaining grants).

     [60] Opposition at 6 n.1.

27   [61] FAC ¶¶ 75, 80–81.

28   [62] *Id.* ¶¶ 8, 65, 68.

1    Sierra Club allege that the Impact Statement "consider[ed] residential-edge fuel breaks of

2    sufficient width in combination with homeowner defensible space to provide safe access for

3    firefighters defending ember[-]resistant homes."[63] The fuel break areas included more than 1,500

4    acres and "would be converted to a mosaic of native shrubs and grass along the residential

5    interface."[64] But the final Impact Statement allegedly "failed to analyze alternatives in light of the

6    Biological Opinion where it vaguely sets out 'fuel break' areas."[65] And, the Park District's 2010

7    Plan — on which the unified methodology was based — did not discuss "the vital question of

8    'fuel breaks,'" but such fuel breaks were included in the final Impact Statement.[66] These

9    assertions, read in conjunction with the rest of the complaint, also relate to the unified

10   methodology and the now-terminated University and Oakland grants.

11        The second relates to the final Impact Statement's failure "to evaluate omitting the Frowning

12   Ridge area."[67] FEMA allegedly arbitrarily removed the University's "grant funding for work at

13   Frowning Ridge."[68] SPRAWLDEF and Sierra Club assert that a lack of fuel management at the

14   Ridge will increase overall fire risk to residential areas and reduce habitat restoration potential.[69]

15   And, they say, the final Impact Statement did not evaluate the effects on the overall project of

16   removing fuel management funding at the Ridge.[70] But when the court asked the parties about the

17   analysis of Frowning Ridge during the October 27 hearing, the plaintiffs did not identify these

18   allegations as separate from those concerning the unified methodology. The plaintiffs instead

19   maintained that their challenge is to the Impact Statement's adoption of the methodology and its

20   failure to analyze thinning versus restoration. The court therefore construes the Frowning-Ridge

21   allegations as a part of that challenge, and these assertions are accordingly moot.

22   _____

23   [63] *Id.* ¶ 25.

24   [64] *Id.* ¶ 26.
     [65] *Id.* ¶ 65.

25   [66] *Id.* ¶ 68.

26   [67] *Id.* ¶ 67.
     [68] *Id.* ¶ 10.

27   [69] *Id.*

28   [70] *Id.*

**2.2  Leave to Amend or Supplement the FAC Is Denied**

The FAC attacked only the disclosure and discussion of overstory removal versus thinning embodied in the unified methodology (see above). But the plaintiffs' opposition indicates an intent to assert and prosecute new claims that do not find support in the FAC. For example, they appear to challenge the evaluation of the Park District's project: they assert that because the Park District's project is moving forward unchanged, so too should their case.[71] And they allege that FEMA's withdrawal of the unified methodology renders the projects "now even more confused" and requires "an EIS re-do."[72] The court construes these arguments as a plea to amend or supplement the FAC.

Under Federal Rule of Civil Procedure 15(a), leave to amend should be given freely "when justice so requires." Fed. R. Civ. P. 15(a); *see Sonoma Cnty. Ass'n of Retired Employees v. Sonoma Cnty.,* 708 F.3d 1109, 1118 (9th Cir. 2013). Because "Rule 15 favors a liberal policy towards amendment, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted." *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530–31 (N.D. Cal. 1989). Courts generally consider five factors when assessing the propriety of a motion for leave to amend: undue delay, bad faith, futility of amendment, prejudice to the opposing party, and whether the party has previously amended the pleadings. *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1055 n.3 (9th Cir. 2009).

Undue delay by itself is generally an insufficient justification to deny leave to amend. *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). Thus, even when there is delay, there must also be a showing of "prejudice to the opposing party, bad faith by the moving party, or futility of amendment." *Id.* The plaintiff's knowledge of — but failure to assert — the relevant facts and claims at the time of earlier pleadings may also weigh in favor of denying leave to amend. *See Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994). But "[p]rejudice to the opposing party is the most important factor." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).

---

[71] *See, e.g.*, Opposition at 6, 8, 11.

[72] *Id.* at 10; *see also id.* at 8.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Supplemental pleadings are governed by Rule 15(d). Under that rule, and with the court's

2    permission, a party may supplement pleadings to add "[n]ew claims, new parties, and [new]

3    allegations regarding events that occurred after the original complaint was filed." *Lyon v. United*

4    *States Immigration & Customs Enforcement*, 308 F.R.D. 203, 214 (N.D. Cal. 2015). "The legal

5    standard for granting or denying a motion to supplement under Rule 15(d) is the same as for

6    amending one under 15(a)." *Id.* (quoting *Paralyzed Veterans of America v. McPherson*, No. C 06-

7    4670 SBA, 2008 WL 4183981, at *26 (N.D. Cal. Sept. 9, 2008)).

8    Here, the court denies leave to amend the FAC to add new charges against the Park District's

9    project. The plaintiffs unduly delayed asserting these claims: despite their awareness of FEMA's

10   Park District-project analysis when they filed their complaint over one-and-a-half years ago,

11   SPRAWLDEF and Sierra Club waited until now (post-summary judgment) to challenge the Park

12   District's project. They could have prosecuted any challenge to the project. They instead

13   previously focused their arguments on the disclosure and analysis of the unified methodology. To

14   allow the plaintiffs to add new challenges — at this stage in the litigation — would prejudice the

15   defendants by shifting the focus of the case and forcing them to undertake a new course of

16   defense.

17   The court also denies leave to supplement the FAC. The plaintiffs' argue that the withdrawal

18   of the unified methodology has rendered the Impact Statement "even more confused on the

19   necessary habitat creation."[73] But, as described above, the plaintiffs' claims have focused on

20   attacking the unified methodology — including its alleged failure to consider Fish & Wildlife's

21   Biological Opinion. The court cannot see how withdrawal of the methodology and those grants

22   renders the Impact Statement "more confused" than before. The court therefore denies the

23   plaintiffs leave to assert that "FEMA's disowning of its own 'unified methodology' requires an

24   EIS re-do."[74]

25

26

27   _____

[73] *Id.* at 10.

28   [74] *Id.*

ORDER — No. 15-cv-02331-LB                    19

1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

The court grants the defendants' motion to dismiss and dismisses the plaintiffs' complaint with

prejudice.

Because the court dismisses the allegations against FEMA, the court also dismisses the claims

asserted against the Park District, Oakland, and the University. The court denies the University's

motion to intervene as moot.

This disposes of ECF Nos. 96 and 97.

**IT IS SO ORDERED.**

Dated: November 15, 2016

_____

LAUREL BEELER
United States Magistrate Judge